hrk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09-40002-01-JAR** |
| | ) | |
| **TYLER N. ROBBINS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on defendant's Motion to Suppress (Doc. 29) as evidence

all items seized during the search of his residence.  A suppression hearing was held on August

31, 2009.  The Court has reviewed the evidence and the parties' submissions and is prepared to

rule.  For the reasons set forth in detail below, defendant's motion is denied.

### I.    Background

On October 30, 2008, Officer Douglas Thoman of the Concordia, Kansas Police

Department, received a phone call from Jenny Parker.  Without explaining the source or date of

her information, she told Officer Thoman that she received a phone call stating that her brother-

in-law, defendant Robbins, was attempting to sell weapons.  Furthermore, she heard he "could be

transporting [four] AK-47 assault rifles and up to or around 4,000 rounds of ammunition."  She

also reported that her father[1] had told her "there was a loaded 12 gauge shotgun sitting next to

the front door," and that defendant had "weapons in the house with him."  She stated that

_____

[1]Ms. Parker's sister, Gina Robbins, was married to defendant.  Therefore, Ms. Parker's father, Loren
Mauch, would be defendant's father-in-law.

defendant was trying to pay someone to batter her and her mother, and she knew there was a warrant issued for his arrest.  She informed the officer that there were two young children living with the defendant, a boy and a girl who were six and seven years old.  She claimed the defendant was a methamphetamine user and a heavy driver, and she had heard him say he was "not afraid to shoot anyone."

That same day, Concordia police officers were assembling a six-person tactical team to execute an arrest warrant on defendant, which had been issued by Montgomery County, Maryland for various firearms violations.  The officers conducted a surveillance of defendant's residence, and Ms. Parker agreed to call her sister, Gina Robbins, and get Ms. Robbins and the two children out of the house.  Officers watched Ms. Robbins leave the house with one child and enter her vehicle.  Officers stopped her at the end of the block, north of the house for questioning.  She agreed to cooperate with the police and called her husband on her cell phone.

Five police officers stationed themselves around the house.  Officer Thoman, the affiant for the search warrant, was positioned on the southwest corner of the house, behind an evergreen tree with a direct line-of-sight to the front door, to watch the front door and retrieve any child that might exit the house.  Police Chief Danny Parker contacted defendant by telephone and instructed him to send out the child.  When defendant opened the front door, he pushed his son out the door and followed closely behind him.  Officer Thoman "noticed a long black object in Mr. Robbins' hand" and immediately signaled Sergeant Fredric Voelker that defendant was holding a long-barreled weapon.  Defendant directed his son toward the lawn and retreated back into the house.  After a moment, defendant returned to the front door of the house unarmed and still speaking on a cell phone.  He walked out onto the lawn where he was arrested.

***Search Warrant***

On October 30, 2008, Officer Thoman presented Magistrate Judge Ire with an affidvit and application for a search warrant on the basis of Ms. Parker's statements and his own observations of events during the execution of the arrest warrant. The search warrant was granted, permitting the police to search the defendant's residence for any firearms maintained in violation of K.S.A. § 21-4204, which prohibits a convicted felon from possessing a firearm.

Sergeant Voelker executed the search warrant with three other officers. They found, among other items, the following: "parts to an AK-47 beside the middle bedroom door, [two] AK-47's in the middle bedroom closet on the floor, a shotgun in the closet on the floor and several boxes of ammunition in the east bedroom."[2] In the east bedroom, the officers also found a green military duffel bag containing another AK-47 with a loaded magazine.[3] A grand jury returned an indictment on January 21, 2009, charging the defendant with five counts of being a felon in unlawful possession of a firearm in and affecting interstate commerce, in violation of 18 U.S.C. § 922(g)(1).

***Suppression Hearing***

Defendant moves to suppress the evidence discovered, alleging that the statements in the affidavit were insufficient to establish probable cause for two reasons: (1) Ms. Parker's statements were motivated by "animosity toward her brother-in-law" and therefore not credible,[4]

---

[2]*See* "Criminal Investigation Narrative Report" attached to the Government's Response Brief as Exhibit A. (Doc. 30-2.)

[3]*Id.*

[4]Defendant does not elaborate on the "animosity" to which he alludes in his motion. His arguments regarding Ms. Parker's credibility focus almost entirely on the hearsay nature of her statements. The fact that an informant relies on hearsay is not a reason, in itself, to discredit an informant's statements: "[H]earsay, even multiple hearsay, may be used to establish probable cause for a search warrant." *United States v. Hogan*, 933 F.

and the basis of her knowledge was not fully disclosed and therefore not reliable, and (2) Officer

Thoman's observations during the arrest, and statements in the affidavit, were unreliable because

he altered the affidavit when he sought magistrate approval of the search warrant application.

The government opposes the motion, claiming that the affidavit was supported by probable cause

or, in the alternative, that the evidence should not be suppressed because the officers executed

the search warrant upon an "objective good-faith belief" in its validity.

At the suppression hearing on August 31, 2009, the government presented the testimony

of Officer Douglas Thoman and Sergeant Fredric Voelker; the defendant presented the testimony

of his wife, Gina Robbins.  The evidence presented to the Court focused solely on the reliability

of Officer Thoman's observations during the execution of the arrest warrant.

Sergeant Voelker testified that, to execute the arrest warrant, he set up a six-man tactical

entry team around the house.  Officer Thoman was positioned behind an evergreen tree on the

southwest corner of the house so he would have a direct line-of-sight to the front door if anyone

exited.  The front door faced directly south on the west side of the house.  Although the porch

had a roof supported by a single four-by-four beam, the porch was not screened-in.  Officer

Thoman was the only officer with a direct line-of-sight to the front door, but Sergeant Voelker

was on the south side of the house with a direct line-of-sight to Officer Thoman.  Sergeant

Voelker stated that when defendant exited the house with his son, Officer Thoman immediately

signaled to Sergeant Voelker that defendant held a weapon.  Sergeant Voelker testified that

Officer Thoman's signal was part of the tactical training designed to indicate to another officer

that a suspect is holding "a rifle."  He stated that he was not confused as to what Officer Thoman

_____

Supp. 1008, 1013 (D. Kan. 1996) (citing *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 n.3 (10th
Cir. 1992)).

intended to communicate.  Sergeant Voelker immediately radioed the other officers to inform them there was a weapon.

Officer Thoman testified that he was approximately twelve to fifteen yards from the front porch, with nothing obstructing his view of the door.  He stated that he was confident the defendant was holding a "black long barreled weapon" when he first exited the house with his son, but he was not sure if it was a firearm or a rifle.  Officer Thoman testified that Chief Parker was communicating with the defendant via cell phone when he first exited.  Only one or two minutes lapsed between the defendant's first and second exits.  When defendant exited the second time, he was still holding his cell phone.  Although the officers did not find a firearm by the front door or in the front room, Officer Thoman testified that the living room was only fourteen feet by twelve feet, with a couple bedrooms off to the side.

Officer Thoman prepared the affidavit and presented it to a magistrate judge for approval.  The judge asked Officer Thoman if he knew defendant was holding a firearm.  Officer Thoman stated that he knew it was a firearm, but did not know if it was a rifle or a shotgun.  The judge requested the officer to alter the language of the affidavit from having seen "a long black object . . . that resembled a firearm," to having seen "either a shotgun or a rifle."

Defense counsel called defendant's wife Gina Robbins, who testified that after she left the house, Chief Parker stopped her at the end of the block north of her house.  She testified that she could see the front of the house from where she was parked.  She saw defendant exit the house with their son, and she testified that defendant was holding a phone, but there was nothing in defendant's hands that looked like a firearm.  From the moment her husband exited with their son, until he was arrested, she stated that she "never lost sight" of him.

On cross-examination, Ms. Robbins testified that, from the front seat of her vehicle, she could see the front porch clearly, but she could not see the entire doorframe.  If a person opened the door, she might be able to see his shoulder only.  On re-cross examination, she stated that there were "three lots," or approximately seventy feet, between her and the front door.

## II.      Discussion

Defendant argues that the affidavit did not support probable cause to believe that contraband or evidence of crime would be found at defendant's residence at the time of the search.  Defendant argues that the affidavit failed to establish probable cause because the informant was biased, and Officer Thoman's amended affidavit was insufficient to establish probable cause for the search warrant.

Because Officer Thoman's observations alone, if reliable, would be grounds for probable cause to issue a search warrant, the Court shall first look to the four corners of the affidavit to decide whether his statements to the magistrate judge established probable cause.  Only if the officer's observations, as stated in the affidavit, were inadequate to establish probable cause must the Court consider the credibility of Ms. Parker's statements to Officer Thoman.

### A.      Probable Cause

Reviewing courts give "great deference" to the issuing magistrate's determination of probable cause.[5]  "If the judge only considered a supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners."[6]  The court's duty is to ensure that the issuing

---

[5]*United States v. Finnigin*, 113 F.3d 1182, 1185 (10th Cir. 1997).

[6]*United States v. Harvey*, 514 F. Supp. 2d 1257, 1259 (D. Kan. 2007) (citations omitted).

magistrate had a "substantial basis" for concluding that the affidavit in support of the search warrant established probable cause.[7]  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."[8]  "The test is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched."[9]  Thus, only a probability and not a prima facie showing is the standard for probable cause.[10]

In *Illinois v. Gates*,[11] the Supreme Court abandoned the requirement that an officer set forth an informant's reliability in the affidavit.  The courts are to determine an informant's credibility or reliability and basis of knowledge under a flexible totality of the circumstances standard.[12]  "Veracity and a basis of knowledge are not, however, rigid and immovable requirements in the finding of probable cause.  A deficiency in one element may be compensated for 'by a strong showing as to the other, or by some other indicia of reliability.'"[13]  Although

---

[7]*United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

[8]*Id.* (citing *Gates*, 462 U.S. at 238).

[9]*Id.* (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

[10]*Id.* (citing *Gates*, 462 U.S. at 235).

[11]462 U.S. 213, 238 (1983).

[12]*United States v. Smith*, 63 F.3d 956, 961 (10th Cir. 1995), *judgment vacated on other grounds*, 516 U.S. 1105 (1996).

[13]*United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992) (quoting *Gates*, 462 U.S. at 233).

first-hand observation is accorded greater weight,[14] "hearsay, even multiple hearsay, may be used to establish probable cause for a search warrant."[15]

A review of the affidavit shows that there was a substantial basis for finding probable cause in support of the search warrant for defendant's residence.  The affidavit states that Officer Thoman saw defendant exit the house with what looked like a weapon.  This first-hand observation alone may be enough for a search warrant.  Officer Thoman's statement that he saw "a long black object in Mr. Robbins' hand that was either a shotgun or a rifle," corroborating Ms. Parker's statement that defendant kept a weapon by the door, provides a substantial basis for the magistrate judge's reasonable inference that the defendant maintained a firearm in his home.[16]

Defendant appears to be arguing that Officer Thoman acted in bad faith when he amended the affidavit.  However, defendant cites to no authority, nor can the Court find any authority, for the inference that an interlineation on an affidavit discredits a magistrate judge's determination of probable cause, especially when that interlineation occurred in the presence and at the advice of a neutral and detached magistrate.[17]

The magistrate judge may issue a search warrant when there is a "fair probability that

---

[14]*Id.*

[15]*United States v. Hogan*, 933 F. Supp. 1008, 1013 (D. Kan. 1996) (citing *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 n.3 (10th Cir. 1992)).

[16]*See United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986) (defendant was seen leaving the house with the weapon provides an inference that he kept it at his home).

[17]Defendant makes no claims that the magistrate judge was biased.  Furthermore, the defendant does not argue that Officer Thoman intentionally or recklessly presented false information to the magistrate judge and does not raise a challenge to the warrant under *Franks v. Delaware*, 438 U.S. 154 (1979).  A *Franks* argument assumes that an affidavit supports probable cause and requires the defendant to prove that information in the affidavit critical to that probable cause was false and presented knowing that it was false or with reckless disregard for the truth. Instead, defendant takes the position that the affidavit in this case does not support probable cause.  Accordingly, the Court does not address the issue of a challenge under *Franks*.

contraband or evidence of a crime will be found in a particular place."[18]  The district court is called to give great deference to the magistrate judge's finding, so long as there is a substantial basis for concluding that the affidavit established probable cause.[19]  Officer Thoman's observations, as clarified in the interlineation, provided a substantial basis for finding that probable cause was established.  The Court finds that the affidavit provided the issuing magistrate judge sufficient information upon which to make a common sense decision that evidence of the crime as charged would be located at defendant's residence.[20]

### B.    Good Faith Doctrine

Even assuming that the affidavit did not support probable cause, the Court upholds the search based on the good faith exception of *United States v. Leon*.[21]  The good faith doctrine evolved because "[w]hen police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."[22]  This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by the magistrates."[23]  Because searches approved by a warrant "are favored," a "magistrate's determination that

---

[18]*Nolan*, 199 F.3d at 1182 (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

[19]*Id.*

[20]*Hogan*, 389 F.3d at 1111 ("[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.") (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)).

[21]468 U.S. 897 (1984).

[22]*United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (citing *United States v. Leon*, 468 U.S. at 913).

[23]*United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005) (citing *Leon*, 468 U.S. at 916).

probable cause exists is entitled to great deference."[24]  Similarly, because "officers are generally

not required to second-guess the magistrate's decision in granting a warrant, . . . evidence

obtained pursuant to a warrant that is later found to be defective is not properly excluded when

the warrant is relied on by the officers in objective good faith."[25]  "In answering this question,

the court should consider all of the circumstances and assume that the executing officers have a

'reasonable knowledge of what the law prohibits.'"[26]

There are four exceptions to reliance on the good faith doctrine: (1) where the judge

issued the warrant on a deliberately or recklessly false affidavit; (2) where the judge abandoned

his neutral and detatched judicial role; (3) where the affidavit is so lacking in indicia of probable

cause that it would be unreasonable for the officer to rely on it; and (4) where the warrant is so

facially deficient and fails to particularize that an officer cannot reasonably believe it to be

valid.[27]

Although the Government did not elaborate on its "good faith" argument, and the

defendant did not directly respond to it, the parties' briefs and evidence focused on either the

first or third exception to *Leon*, arguing either that the magistrate issued the warrant on a

deliberately or recklessly false affidavit, or that the information provided to the magistrate judge

did not support a finding of probable cause.[28]  The Court finds that neither exception to the good

---

[24]*Id.* at 1228-29.

[25]*Id.* (citing *Leon*, 468 U.S. at 916).

[26]*United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005).

[27]*Leon*, 468 U.S. at 923.

[28]The Court notes that the defendant did not request a *Franks* hearing, and neither the defendant nor the government cite to *Franks v. Delaware* in their briefs.  In fact, neither party expressly alleges or discusses whether the affidavit was "deliberately or recklessly false."  Therefore, the Court's discussion of the first exception is brief.

faith doctrine applies in this case.

As previously discussed, and further supported by evidence presented at the suppression hearing, the Court finds that the defendant failed to demonstrate why the interlineation in the affidavit was unreliable.  The officers who executed the search warrant had no reason to question the validity of the interlineation.  In fact, at least three of the officers involved in executing the search warrant had helped execute the arrest warrant earlier that evening.[29]  Very likely, all were aware of what transpired at defendant's arrest.  Sergeant Voelker testified that, once he saw Officer Thoman signal the presence of a firearm, he radioed all of the officers to inform them a weapon was present.

Officer Thoman's observations, furthermore, appear reliable.  He testified that, during the execution of the arrest warrant, he was within fifteen yards of the front porch with a direct line-of-sight to the door.  Ms. Robbins testified that she was at least seventy feet from the door and positioned at an angle that did not allow her to see everything that took place within the doorframe.  Her testimony, therefore, does not directly discredit the statements of Officer Thoman.  Furthermore, even though Officer Thoman was the only officer with a direct line-of-sight to the front door, he immediately acted upon his observations by signaling Sergeant Voelker that the defendant was holding "a rifle."

When Sergeant Voelker later executed the search warrant, he had no reason to question the accuracy of the interlineation.  In fact, the interlineation accurately captured what Officer Thoman had previously communicated to Sergeant Voelker during execution of the arrest

---

[29]Sergeant Voelker and Officers Beldon and Davis are mentioned in both the affidavit, which sets out the events of the arrest, and the Criminal Investigation Narrative Report, which details how the search warrant was executed.  *See* Docs. 29-2 and Doc. 30-2.

warrant.  From the testimony at the hearing, it appears the magistrate judge's inquiry into the precise language used in the affidavit was intended to clarify Officer Thoman's meaning, rather than to alter what took place.  There is no evidence showing that Officer Thoman's clarifying amendment was unreliable or lacked credibility.  If defendant is arguing the first exception to the *Leon* good faith doctrine, he has failed to meet his burden.  "[T]o establish a lack of good faith where information has been omitted from the affidavit, the defendant must prove by a preponderance of the evidence that officer acted intentionally or recklessly."[30]  Defendant has failed to make that showing in this case.

Furthermore, the Court finds that the affidavit in support of the warrant contained sufficient indicia of probable cause such that the executing officers' actions in reliance upon it were reasonable and exercised in good faith.  Officer Thoman's observations while executing the arrest warrant served as the basis for the search warrant application, and nothing in his recorded observations indicated an exercise of bad faith or a lack of probable cause.  In fact, Sergeant Voelker, who helped execute the search warrant, had previously seen Officer Thoman give the "rifle" signal at the scene of the arrest.[31]

Moreover, the affidavit included accurate statements by Ms. Parker who not only served as an informant for the search warrant, but assisted with the execution of the arrest warrant.  In her statements to Officer Thoman, Ms. Parker knew there was an outstanding warrant for the defendant's arrest.  Additionally, she warned him that there were two children, a boy and a girl

---

[30]*United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005) (citing *United States v. Corral-Corral*, 899 F.2d 927, 933).

[31]*See United States v. Ventresca*, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.").

ages six and seven, living with the defendant.  Because of the reliability of these statements by Ms. Parker, and her familial connections to defendant's home, it was not unreasonable for the officers to rely on other statements made by her and incorporated into the affidavit regarding the presence of firearms in the defendant's house.

Sergeant Voelker and his fellow officers executed the search warrant in good faith reliance on the magistrate judge's properly issued search warrant.  A warrant based upon the information supplied in this case to the magistrate judge would not have been recognized by a reasonably well-trained officer as illegal.  Accordingly, the officers' belief in the legal validity of the warrant was objectively reasonable, and the case falls within the good faith exception of *Leon*.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to suppress (Doc. 29) is DENIED.

Dated:  September 24, 2009

 S/ Julie A. Robinson

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

13